IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
10/10/2014

| | | |
|---|---|---|
| IN RE: § | | |
| HILDA E GOMEZ; fka CANTU; aka § | CASE NO: 13-70667 | |
| GOMEZ § | | |
|     Debtor(s) § | | |
| § | CHAPTER 13 | |
| § | | |
| DE SANCHEZ DAY SPA & SALON § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-07004 | |
| § | | |
| HILDA E. GOMEZ § | | |
|     Defendant(s) § | | |

## MEMORANDUM OPINION

On July 14, 2014, this Court granted a temporary injunction order against the defendant, Hilda Gomez. The injunction is set to expire on October 15, 2014. The Court grants a preliminary injunction through 5:00 p.m. on December 15, 2014. The preliminary injunction is subject to the posting of an additional $10,000.00 bond.

### Procedural Background

On August 2, 2013, Plaintiff, De Sanchez Day Spa and Salon, filed a complaint against the debtor, Hilda Gomez, for violating a non-compete agreement contained in an employment contract. (ECF No. 1-1). In the original complaint, De Sanchez asserted several claims against Gomez, including breach of contract, tortious interference with contractual and prospective business relations, and misappropriation and misuse of confidential information. On September 11, 2013, De Sanchez filed a First Amended Original Petition and Temporary Injunction seeking to enjoin Gomez from working as a manicurist and or cosmetologist. (ECF No. 1-6).

On September 11, 2013, the 275th Judicial Court of Hidalgo held a hearing on De Sanchez's Application for a Temporary Injunction. On December 9, 2013, the state court issued a temporary injunction order against Gomez. The order states: "ORDERED, that Defendant HILDA E. CANTU (GOMEZ), and her respective agents, representatives, attorneys, employers, partners, business associates, landlords, and those acting in concert therewith, be and hereby enjoined from: (a) competing against De Sanchez Day Spa & Salon within a ten (10) mile radius for a period of two (2) years from December 5, 2013. (b) soliciting clients of De Sanchez Day Spa & Salon for a period of five (5) years from December 5, 2013." (ECF No. 1-7 at 7). According to its terms, the injunction was set to expire on February 19, 2014. (ECF No. 1-7).

On December 11, 2013, Debtor filed a Chapter 13 bankruptcy case. (Case No. 13-70667, ECF No. 1). Gomez filed a notice of removal of the state court lawsuit on March 4, 2014. This Court held a status conference on June 16, 2014. At the conference, De Sanchez withdrew its previously filed motion for remand. (ECF No. 6). The Court set a hearing for July 14, 2014 on whether to issue a preliminary injunction.

**Fact Background**

De Sanchez is in the business of providing spa-related treatments and services. In September of 2000, De Sanchez hired Gomez as a nail technician. (ECF No. 1-7 at 3). At the outset of the employment agreement, Gomez and De Sanchez entered into an Employment Agreement that included a non-compete provision that stated that "he/she [Gomez] will not compete against De Sanchez within a ten (10) mile radius for a period of two years following the termination of this contract." (ECF No. 25-1). Gomez also agreed not to solicit clients of De Sanchez for a period of five years following the termination of her employment. *Id*. Gomez re-signed the Employment Agreement on two additional occasions in 2006 and 2007. De Sanchez provided Gomez with considerable training over the course of her 13 years of employment.

During this time, Gomez became qualified to offer additional spa related services such as manicures, pedicures, and facials. (ECF No. 1-1 at 2).

Gomez voluntarily left De Sanchez on April 19, 2013. The next day, Gomez began working at Crossroads Salon, which is located within the 10 mile radius. (ECF No. 25-16). De Sanchez claims that over 170 clients that Gomez serviced while employed at De Sanchez have not returned since Gomez left. (ECF No. 25-16 at 23). De Sanchez alleges that Gomez solicited and targeted many of De Sanchez's clients in violation of the non-solicitation agreement. (ECF No. 1-1 at 2).

In the state court hearing on De Sanchez's application for a temporary injunction, Gomez admitted that she was servicing "dozens" of the clients that she previously serviced at De Sanchez. (ECF No. 25-16 at 69).

### July 14, 2014 Hearing

On July 14, 2014, the Court held a hearing on whether to grant a preliminary injunction. Plaintiff's Exhibits 1-17, and 25-31 were admitted into evidence. At the hearing, the Court held that Gomez violated the state court temporary injunction order for a total of 68 days. 28 U.S.C. § 959 prevents debtors from violating state court orders. *See* 28 U.S.C. § 959 (stating that "a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated."); s*ee also* Fed. R. Bankr. P. 9027(i), which provides that "[a]ll injunctions issued, orders entered, and other proceedings had prior to removal shall remain in full force and effect until the dissolved or modified by the court."). Accordingly, the Court granted a preliminary injunction enjoining Gomez from competing with De Sanchez for the next 68 days.

The proper bond amount was determined to be $11,250.00, based on Gomez's approximate $60,000.00 annual earnings.[1] On August 1, 2014, De Sanchez filed its notice of Filing a Surety Bond. (ECF No. 32). Accordingly, Gomez was ordered to cease and desist her spa related operations by August 8, 2014. The injunction is due to expire on October 15, 2014.

At the July 14, 2014 hearing, the Court did not decide whether the state court injunction was properly granted. The Court stated that if the injunction is determined to be wrongful, then the court would award the $11,250.00 bond to Gomez.

## Preliminary Injunction Standard

The Court grants an injunction through 5:00 p.m. on December 15, 2014. A bankruptcy court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Injunctive relief granted pursuant to section 105 must be tested against the standards of Federal Rule of Civil Procedure 65, which is made applicable via Bankruptcy Rule 7065. *See In re Tribeca Lofts LP*, 2011 WL 3878369 (Bankr. S.D. Tex. Aug. 30, 2011).

In issuing this preliminary injunction, the Court has considered the following factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to the movant outweighs any harm to the nonmovant that may result from the injunction; and (4) that the injunction will not undermine the public interest. *Speaks v. Kruse,* 445 F.3d 396, 399-400 (5th Cir. 2006).

*Probability of Success on the Merits*

With respect to the probability of success on the merits, there is a reasonable probability that De Sanchez succeeds on the merits. To sustain a claim for breach of the covenant not to

---

[1] Based on the testimony, the Court estimated that a 68 day injunction would result in Gomez losing approximately $11,250.00 in earnings.

compete, De Sanchez must show that (i) the non-compete agreement is enforceable; (ii) Gomez violated the non-compete; and that (iii) Gomez does not have an affirmative defense. It is undisputed that Gomez has violated the terms of the non-compete agreement. Gomez disputes the enforceability of the non-compete and asserts two affirmative defenses.

### A. Criteria for Enforceability of Covenants Not to Compete

Section 15.50 of the Texas Business and Commerce Code provides:

> A covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise.

Tex. Bus. & Com. Code. § 15.50.

Gomez argues that the non-compete agreement does not satisfy the requirements of § 15.50 because the non-compete agreement (i) lacks consideration, (ii) contains unreasonable time and geographic restrictions, and (iii) does not protect a legitimate business interest. The Court finds that De Sanchez has a reasonable probability of success on all three of these issues.

In *Sheshunoff*, the Texas Supreme Court held that for a covenant not to compete to be "ancillary to or part of an otherwise enforceable agreement," the employer must establish both "(1) that the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) that the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 649 (Tex. 2006).

The Texas Supreme Court has held that "a unilateral contract formed when the employer performs a promise that was illusory when made can satisfy the requirements of the Act." 209 S.W.3d 644, 651 (Tex. 2007). In *Sheshunoff*, the employer promised to disclose confidential

information and provide specialized training, and the employee promised not to disclose confidential information. *Id*. at 649. The Court reasoned that the employer's promises were illusory because the employer could terminate the employee at will before it provided the training or confidential information. *Id*. The Court then concluded that the unilateral contract became enforceable when the employer performed by providing the training and confidential information and thus satisfied the requirement of the Act. *Id*. at 651 ("There is no sound reason why a unilateral contract made enforceable by performance should fail under the Act.").

Similar circumstances are present in this case. De Sanchez and Gomez entered into an at will Employment Agreement that provides: "The undersigned acknowledges that he/she has and will continue to receive valuable on-the-job training and education and that De Sanchez has made/ and will continue to make a substantial investment in the undersigned's training and professional development..." and that "he/she will have access to confidential information and business secrets, including client information, marketing and pricing strategies and other operation and management business secrets. As a result, the undersigned agrees that he/she will not compete against De Sanchez within a ten (10) mile radius for a period of two years following the termination of this contract. The undersigned further agrees not to solicit clients of De Sanchez for a period of five years following the termination of this contract." (ECF No. 25-1). The agreement also required Gomez "to keep strictly confidential all on-the-job training received, all client information, and all pricing and marketing strategies learned from De Sanchez." *Id*.

De Sanchez's promises to provide specialized training and confidential information were illusory at the time they were made because the parties had an "at will" employment contract. However, if and when De Sanchez actually provided the specialized training and/or confidential information, the unilateral contract became enforceable. Gomez points out that "the employer

must demonstrate that the specialized training actually occurred or that the confidential information was actually received after the agreement has been signed; mere access is insufficient." (ECF No. 13 at 8) (citing *Olander v. Compass Bank*, 363 F.3d 560, 565 (5th Cir. 2004). Accordingly, if De Sanchez can demonstrate the it actually provided the confidential information *or* specialized training, then the agreement became an enforceable contract. This would bind Gomez to fulfill her return promises and thus satisfy the requirement that the covenant must be "ancillary to an otherwise enforceable agreement."

It is undisputed that Gomez received an extensive amount of training over the course of 13 years of employment. Gomez argues that the training wasn't sufficiently specialized and that she had limited access to confidential customer lists. However, in *Sheshunoff*, the Supreme Court of Texas explained that these concerns are more appropriately addressed in determining whether and to what extent a restraint on competition is justified. The Supreme Court explained:

> We also take this opportunity to observe that section 15.50(a) does not ground the enforceability of a covenant not to compete on the overly technical disputes that our opinion in *Light* seems to have engendered over whether a covenant is ancillary to an otherwise enforceable agreement. Rather, the statute's core inquiry is whether the covenant contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. Concerns that have driven disputes over whether a covenant is ancillary to an otherwise enforceable agreement—**such as the amount of information an employee has received, its importance, its true degree of confidentiality, and the time period over which it is received—are better addressed in determining whether and to what extent a restraint on competition is justified**.

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 655-56 (Tex. 2006) (emphasis added) (internal citations omitted).

Indeed, Gomez's arguments are related to whether the terms of the non-compete "impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise." Tex. Bus. & Com. Code. § 15.50. There is substantial evidence to support De

Sanchez's claim that the non-compete agreement is designed to protect a legitimate business interest. Gomez does not dispute that she received a significant amount of valuable training during her time at De Sanchez. There is extensive testimony from Mr. and Mrs. Sanchez and other current employees about (i) the specialized training that Gomez received and (ii) her access to confidential information.

Gomez claims that she could have obtained all of the different types of training she received at De Sanchez by attending workshops, going online, or from product manufacturers in the industry. (ECF No. 25-16 at 38). The degree to which the training that Gomez received was specialized will be addressed at the trial on the merits.

There was conflicting testimony as to whether De Sanchez actually provided Gomez with any confidential information. Although it appears that Gomez did not have access to De Sanchez's complete customer list, there was testimony that she had access to each of her client's contact information. (ECF No. 16 at 37). There was also significant testimony about product, marketing, and pricing strategies that was provided to Gomez.

In any event, the amount of information that Gomez has received, its importance, and its true degree of confidentiality will be addressed at trial when the Court determines whether and to what extent the non-compete agreement was justified.

Finally, the time and geographic restrictions appear to be reasonable. Two to five years has repeatedly been held as a reasonable time in a non-compete agreement. *See e.g.*, *Arevalo v. Velvet Door, Inc.*, 508 S.W.2d 184, 186 (Tex. Civ. App. 1974); *Elec. Data Sys. Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex. Civ. App. 1974); *Weber v. Hesse Envelope Co.*, 342 S.W.2d 652, 656 (Tex. Civ. App. 1960). The 10 mile radius appears to be reasonable because it is limited to where the majority of De Sanchez's customers reside.

Furthermore, if this Court determines that the non-compete agreement is overbroad and/or unreasonable, this Court may modify and enforce it to the extent necessary to protect De Sanchez's legitimate business interest. *See Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 762 (Tex. App. 1996) ("An agreement not to compete which is not appropriately limited may be modified and enforced to the extent necessary to protect the promisee's legitimate interest.").

### B. Gomez's Affirmative Defenses

The Court finds that Gomez is unlikely to succeed on either of her defenses. Gomez has not presented sufficient evidence to support her claim that De Sanchez waived its right to enforce the non-compete agreement. The only evidence to support Gomez's waiver argument is her affidavit, where she states that "[i]n fact, the employer I rent under now, Rose Gonzalez, was previously employed by De Sanchez. She left De Sanchez to start her own spa company, and De Sanchez has done nothing to enforce their non compete." (ECF No. 27-1 at 3). There is no evidence that that Gonzalez even signed a non-compete agreement, much less evidence that she violated the agreement and that De Sanchez made a conscious decision not to enforce it. Gomez's "unclean hands" defense is also unlikely to succeed. The unclean hands doctrine only applies if the misconduct at issue is connected to the subject of the litigation and the party asserting the defense has been seriously harmed by the misconduct. *See 1st Coppell Bank v. Smith*, 742 S.W.2d 454 (Tex. App. 1987) ("Conduct with regard to a separate transaction will not be held to constitute unclean hands."). Gomez has failed to allege misconduct relating to the non-compete agreement.

*Irreparable harm*

De Sanchez has established that there is a substantial threat of irreparable harm if the injunction is not granted. Mrs. Sanchez testified that approximately 170 clients have not

returned since Gomez left De Sanchez. Gomez testified that she was servicing "dozens" of former De Sanchez customers at her new place of employment. Accordingly, Gomez's violation of the non-compete agreement has already caused significant damages to De Sanchez. In this case, remedies available at law, such as monetary damages, are unlikely to adequately compensate De Sanchez if Gomez were to violate the agreement because Gomez has initiated bankruptcy proceedings. In *Aspen Tech*, the Fifth Circuit held that it was within the district court's discretion to grant a permanent injunction where plaintiff would suffer irreparable harm because there was a substantial probability that the plaintiff would be unable to collect a judgment against defendant in light of defendant's initiation of bankruptcy proceedings. *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014). Accordingly, the Court finds that De Sanchez faces a substantial threat of irreparable harm.

*Threatened Injury to De Sanchez Outweighs Harm to Gomez*

After considering the balance of hardships between the plaintiff and defendant, the Court finds that a remedy in equity is warranted. Gomez admitted to violating the temporary injunction order for a period of 68 days. Gomez signed the non-compete agreement on three separate occasions. De Sanchez has spent a significant amount of money and time training Gomez to provide a wide range of spa related services. Additionally, De Sanchez relied on the enforceability of the non-compete agreements in making its decision to make substantial capital investments to expand the business.

The Court is aware of the hardship this creates on Gomez's ability to earn a living. However, Gomez's conduct has proven that a preliminary injunction is needed in order to preserve the status quo until the Court holds a hearing on the merits. Gomez began violating the non-compete agreement one day after her employment terminated with De Sanchez. Gomez testified that she did not even attempt to obtain spa related employment outside of the 10 mile

radius. She admitted that she began servicing "dozens" of customers that she previously serviced while at De Sanchez. There is also evidence that she solicited some of these customers to follow her to her new place of employment. Finally, Gomez's counsel admitted that she violated the state court temporary injunction order based on the mistaken belief that the automatic stay permitted her to do so.

Accordingly, the prospective injury to De Sanchez outweighs the prospective injury to Gomez.

*Public Interest*

The only relevant public interest appears to be the public's interest in competition and freedom of choice: "If the injunction is denied, the public will be free to choose Plaintiff or Defendant to receive its beauty services." (ECF No. 1-5 at 14). The enforcement of any non-compete agreement necessarily results in the reduction of some competition.

There was detailed testimony from Mrs. Sanchez and other current employees about how Gomez's violation of the non-compete has negatively impacted De Sanchez's employees. More than 20 of De Sanchez's 30 employees work on a commission basis. (ECF No. 25-15 at 61). De Sanchez prides itself in a being a "one stop shop" offering a wide range of spa related services. Each commission based employee provides a specialized type of spa service and receives a substantial benefit from "cross sales." (See ECF No. 25-17 at 74) (where Renee Munoz testified that she lost "cross sales" when Hilda Gomez left). When Gomez began servicing former De Sanchez customers at her new place of employment, De Sanchez employees were no longer referred for providing other spa related services. Accordingly, Gomez's violation of the non-compete has caused some of Gomez's former co-workers to suffer a reduction in commissions. The Court finds that the public interest favors the imposition of this preliminary injunction.

### Bond Requirement

Rule 7065 states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Bankr. P. 7065. The Court finds that the proper additional bond amount is $10,000.00. Accordingly, if De Sanchez posts the bond, the injunction will remain in effect until 5:00 p.m. on December 15, 2014.

### Conclusion

The Court will hold a final trial on the merits on December 15, 2014 at 1:30 p.m.

SIGNED **October 10, 2014.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE